

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| MARY JANE FERRY, | ) | No. ED101714 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Barbara W. Wallace |
| WILLIAM PATRICK FERRY, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: September 22, 2015 |

### Introduction

William Ferry (Husband) appeals the judgment of the Circuit Court of St. Louis County awarding Mary Jane Ferry (Wife) $10,000 in a post-divorce equitable suit for the division of undivided marital property. In three points on appeal, Husband claims that the trial court erred by entering judgment for Wife because (1) Husband had no "legal duty" to revise his financial statements after the close of evidence but before entry of the dissolution decree; (2) the property at issue is not marital property subject to division and Wife, in any case, failed to establish fraud; and (3) the doctrine of laches bars Wife's claim. Husband's second point is dispositive. No substantial evidence supports a finding that Husband fraudulently concealed the alleged marital property. Accordingly, we reverse.

**Factual Background**

Trial on the dissolution of the parties' marriage was concluded in December 2006. Shortly after, Husband lost his employment at A.G. Edwards as a stock broker. Before the trial court entered its divorce decree, Husband, on February 7, 2007, regained employment as a stock broker with Oppenheimer & Co., Inc. Under the Employment Agreement (Agreement) with Oppenheimer, Husband was entitled to multiple contingent, up-front loans totaling $245,000 (up-front loans):

> 3. <u>UP-FRONT LOAN</u>
> Provided you are in active full-time employment with Oppenheimer . . . , Oppenheimer agrees to compensate you in accordance with the following terms:
>
> a)  Subject to the terms of this Agreement, Oppenheimer is willing to loan you the amount of ONE HUNDRED TWENTY-TWO THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($122,500) (the "Up-Front Loan"), upon the later of the commencement of your employment . . . .
>
> b) TWENTY-FOUR THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($24,500) of the Up-Front Loan will be forgiven by Oppenheimer on an annual basis for the next (5) years.
>
> c)  In the event your employment terminates for any reason prior to the entire amount of the Up-Front Loan being forgiven, the Up-Front Loan shall, within ten (10) business days of the date of your determination, be due and payable . . . . .
>
> *     *     *
>
> 4. <u>PRODUCTION AND ASSET LOAN.</u>
>
> a)  Subject to the terms of this Agreement, Oppenheimer will make a loan to you in the amount of FIFTY-TWO THOUSAND FIVE HUNDRED and 00/100 DOLLARS ($52,500) provided that within your first fourteen months of employment (i) your assets under management are at least THIRTY MILLION and 00/100 DOLLARS ($30,000,000) and (ii) you are still an employee of Oppenheimer at the time of this event.
>
> b)  Subject to the terms of this Agreement, Oppenheimer will make an additional loan to you in the amount of SEVENTY THOUSAND and 00/100 ($70,000) provided that within your first fourteen months of employment (i) you have a gross sales production . . . of at least THREE HUNDRED FIFTY-FIVE

THOUSAND and 00/100 DOLLARS ($355,000) and (ii) you are still an employee of Oppenheimer at the time of this event.

c) In the event your employment terminates for any reason prior to the entire amount of these loans being forgiven, these loans shall immediately be due and payable without notice . . . .

Husband did not inform the trial court of his new employment, but told Wife in February 2007 that A.G. Edwards had fired him. A month later, in March 2007, Wife discovered that Husband had been hired by Oppenheimer, but was unaware of the up-front loans provided for under the Agreement. Neither party informed the trial court of the Agreement and, on May 31, 2007, the trial court entered its dissolution decree without considering the up-front loans. The judgment was amended in September 2007 and, again, the trial court did not divide any "assets" related to the Agreement. Wife apparently did not learn of the up-front loans until Husband moved to modify his maintenance and child support obligation in 2009.

Subsequently, in March 2013, Wife filed the instant amended petition in equity to dispose of alleged marital property undivided in the dissolution decree, i.e., the $245,000 in contingent, up-front loans provided for under the Agreement. In the petition, Wife asserted that the Agreement was a marital asset that Husband failed to disclose in order to deprive Wife of her marital interest in the Agreement. Given the fraud Husband allegedly perpetrated, Wife asked the trial court to invoke its equitable powers to divide the asset in half.

Both Husband and Wife testified at a bench trial. Wife indicated that she worked with Husband at Husband's prior employer, A.G. Edwards; her focus was primarily on procuring clients for Husband through marketing and arranging client meetings. To Wife's knowledge, Husband, while still working at A.G. Edwards, had been offered around half a million dollars to move his "book of business," or collection of clients, to another brokerage firm. Being in the financial consulting business and working with Husband, Wife indicated that she was aware that

3

brokers are typically offered a "transition package" when they move from one brokerage firm to another and bring their clients. Wife admitted, however, that Husband's "transition package" was the only such transition package she had ever seen. Wife testified that she believed she was entitled to half an interest in the Agreement because she had helped Husband build his book of business.

Husband testified that after Oppenheimer hired him, he did not give Wife a copy of the Agreement because "there was no reason to give her a copy." Husband explained that under the Agreement's compensation schedule, he would be entitled to the loans if he procured a certain amount of assets, not necessarily from A.G. Edwards but from any source other than another Oppenheimer broker; the up-front loans, according to Husband, were not contingent on bringing over his clients from A.G. Edwards. Husband further testified that the compensation was based on probable production given his experience in managing $57 million in assets while employed at A.G. Edwards, was intended to award Husband for work going forward, and that he had in fact received the full amount of the loans and each had been forgiven over the prior five-year period after dissolution of the parties' marriage. Husband stated that he acknowledged the funds as income in his motion to modify and never suggested that the Agreement was a marital asset or debt. Husband also said Wife's contribution to his book of business at A.G. Edwards was "less than minimal" and that he had developed all of his business at A.G. Edwards before the marriage.

Additionally, Husband introduced into evidence his pay stubs and W-2's for tax years 2008 through 2012, which reflected that the up-front loans had been taxed as income in the years that they vested. Husband also presented the testimony of a certified public account, Diane Maixner. In her testimony, Maixner indicated that the IRS treated up-front loans, like those in

4

the Agreement, as ordinary taxable income. Maixner testified that the up-front loans were compensation, as opposed to a bona fide loan. Maixner explained that the IRS would levy the tax on the funds when the funds are earned, i.e., when the funds vested.

After the bench trial, the court entered a judgment in Wife's favor. The trial court found that Husband's "book of business" was an "asset" that had benefited him in obtaining the Agreement, thereby effectively finding that the Agreement is marital property; that "[Husband] should have informed" the trial court of his new employment; and that Wife's contribution to the book of business amounted to $10,000. Husband appeals.

## Standard of Review

"The judgment in a court-tried case will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *May v. O'Roark*, 329 S.W.3d 410, 413 (Mo. App. W.D. 2011).

## Discussion

We only consider Husband's second point on appeal because it is dispositive. In his second point relied on, Husband claims that the trial court erred in ruling in favor of Wife because Wife knew of the marital "asset" and, therefore, failed to establish fraud.[1] In response, Wife argues that she properly invoked the trial court's equitable powers and that substantial evidence exists to support a finding that Husband committed fraud by concealing an asset acquired during the marriage.

Section 452.330(3), RSMo. 2000, provides in relevant part that "[a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property . . . ." "When a judgment of the trial

---

[1] Husband's second point is multifarious in violation of Rule 84.04(d), in that it also claims that the trial court erred in ruling that the Agreement is a marital asset subject to division under § 452.330 RSMo. 2000. We need not consider this claim because we resolve this appeal on the other ground raised in the point.

court distributing marital property becomes final, it may not be modified in the same case." *Chrun v. Chrun*, 751 S.W.2d 752, 755 (Mo. banc 1988). Instead, the aggrieved party may bring a "separate equitable cause of action to divide marital property omitted from a division in an earlier dissolution of marriage decree due to fraud, accident or mistake." *Doss v. Doss*, 822 S.W.2d 427, 428 (Mo. banc 1992). "It is not sufficient merely to show that marital property was left undivided in the dissolution decree; there must also be shown some ground for the exercise of the equitable powers of the court, such as fraud or mistake." *Iverson v. Wyatt*, 969 S.W.2d 797, 800 (Mo. App. W.D. 1998).

Assuming without deciding that the up-front loans constituted marital property, Wife failed to demonstrate that Husband fraudulently concealed marital property. To establish fraud, a party must generally show: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity; (5) his intent that the statement should be acted upon by the other party in the manner contemplated; (6) that party's ignorance of the falsity; (7) reliance on the truth; (8) the right to rely thereon; and (9) injury." *Grasse v. Grasse*, 254 S.W.3d 174, 180 (Mo. App. E.D. 2008).

Here, Wife testified that she knew that Husband's book of business had a substantial value. Specifically, Wife testified that Husband, during their marriage, had received other offers for his book of business around half a million dollars. She further indicated that she had contributed to the growth of Husband's book of business through her marketing efforts to secure new clients when she worked with Husband at A.G. Edwards. It follows that, at the time of the dissolution proceedings, Wife knew about this alleged substantial marital asset, which ultimately manifested in the Agreement.[2] Because Wife was not ignorant of this alleged marital property,

---

[2] At oral argument, Wife's counsel conceded that Husband's book of business and the Agreement are "one in the same."

6

as demonstrated through her own testimony at the hearing, she failed to establish that Husband's failure to disclose the Agreement to the trial court constituted fraud. *See Grasse*, 254 S.W.3d at 180. Consequently, while we in no way condone Husband's failure to disclose his new employment secured after the close of evidence but before entry of the dissolution decree, the trial court's judgment must be reversed because no substantial evidence supports a finding that Husband fraudulently concealed marital property.[3] *See May*, 329 S.W.3d at 413. Under these circumstances, Wife failed to properly invoke the equitable power of the trial court to divide marital property that was not divided in the prior dissolution proceeding. *See Iverson*, 969 S.W.2d at 800. Point II granted.

### Conclusion

The judgment of the trial court is reversed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J. concur.

---

[3] The judgment itself makes no finding that Husband concealed his book of business benefiting him in obtaining the Agreement.